**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.  82 CR 119 |
| | : | |
| Plaintiff, | : | JUDGE JOHN ADAMS |
| | : | |
| vs. | : | |
| | : | |
| KEVIN MCTAGGART, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO STAY RULING ON HIS REQUEST FOR COMPASSIONATE RELEASE SO THAT CONGRESS MAY PASS PENDING LEGISLATION INTENDED TO MAKE INMATES LIKE HIM ELIGIBLE FOR SUCH RELIEF OR ALTERNATIVE MOTION FOR IMMEDIATE RELEASE PURSUANT TO RULE 35 OF THE RULES OF CRIMINAL PROCEDURE**

**Introduction and Context**

Before this Court is Defendant Kevin McTaggart's motion requesting early release pursuant to Title 18 U.S.C. § 3582(c)(1)(A)(i). That motion has, in one form or another, been pending before this Court since September of 2020. The government's response to that request has largely reflected opposition to it, although the tone of that opposition has varied over time.

On January 14, 2022, however, the government supplemented its opposition with an additional argument. Specifically, the government maintained that, because Mr. McTaggart's original prosecution and sentencing predated the Federal Sentencing Guidelines, the early release provisions under Title 18 U.S.C. § 3582(c)(1)(A)(i) did not apply to him. If, as the government now argues, the provisions allowing this Court to grant compassionate release only apply to

1

those sentenced under the Guidelines, then this Court may not grant the relief Mr. McTaggart requests.

As discussed more fully herein, that development gives rise to two requests (and possibly a third) Mr. McTaggart makes of this Court in the alternative. First, if it is true that "old law" prisoners, of which Mr. McTaggart is one, are not eligible for compassionate release, then Mr. McTaggart asks this Court to stay this case and hold it in abeyance in light of the fact that legislation is currently pending before Congress intended to address this precise class of prisoners and make them eligible for early release. Alternatively, Mr. McTaggart asks this Court grant his release in light of the information he has provided to this Court by finding his sentence illegal under the version of Fed. R. Crim. Pro. 35 in effect at the time of Mr. McTaggart's trial and sentencing. Finally, if this Court refuses to grant either of these requests, Mr. McTaggart would seek leave to withdraw his motion for compassionate release.

**Request to stay this litigation in light of pending legislation which will render old law inmates eligible for compassionate release.**

Currently pending in 117th Congress is S. 312. The stated purposes of that legislation is:

> To expand eligibility for and provide judicial review for the Elderly Pilot Program, provide for compassionate release based on COVID-19 vulnerability, shorten the waiting period for judicial review during the COVID-19 pandemic, and make other technical corrections.

The bill was introduced by Senators Durbin, Grassley, Whitehouse, Tillis, Coons, Cramer, Booker, and Wicker on February 21, 2021. It was referred to committee in June of 2021.

Among the changes to Title 18 U.S.C. § 3582 that the law effects, is an expansion of (c)(1)(A) so that the compassionate release consideration contemplated by the law applies to inmates, like Mr. McTaggart, who were sentenced before 1987, while also shortening the administrative exhaustion requirements previously required thereunder. That proposed

legislation is attached to this motion as Ex. A. On February 16, 2022, Senator Blunt joined on as an additional cosponsor. Given the bipartisan nature of the bill's sponsorship, there is a reasonable probability, if not strong likelihood, that the bill will pass and become law.

In light of Mr. McTaggart's extraordinary prison record, the abundant evidence of his rehabilitation already provided to this Court, and the fact that he has served nearly 40 years in prison, Mr. McTaggart asks this Court to stay ruling on his motion for compassionate release for the period of one year. Undersigned counsel will provide this Court with status reports on the bill's progress every 90 days. If, at the end of that time, the bill has not passed, Mr. McTaggart will ask to withdraw the motion.

**Mr. McTaggart requests immediate release under the version of Fed. R. Crim. Pro. 35 in effect at the time of his prosecution and sentencing.**

Although this Court has concluded otherwise, the Parole Board has taken the position that Mr. McTaggart was sentenced to life without parole in 1983. Accordingly, the Board refuses to allow Mr. McTaggart to appear before it and demonstrate his entitlement to release under that body's supervision. Nevertheless, as this Court has found and prosecutors have acknowledged, Mr. McTaggart was sentenced to life *with* parole in 1983. The Board's conclusion to the contrary is illegal. Mr. McTaggart was not sentenced to LWOP.

Under the circumstances, and as discussed further below, Rule 35, as that rule existed at the time Mr. McTaggart was sentenced, allows this Court to vacate the illegal LWOP sentence and allow his release. Doing so would render Mr. McTaggart's pending compassionate release motion moot.

*Rule 35 permits correction of an illegal sentence at any time*

Mr. McTaggart received a life sentence after a jury found him guilty of participating in an enterprise through a pattern of racketeering activity and conspiracy, operating a continuing

3

criminal enterprise, interstate transport in aid of a racketeering enterprise, possession with intent to distribute a schedule II controlled substance, and using a telephone to distribute drugs. That sentence was not a LWOP sentence. In fact, this Court noted as much when it clarified that McTaggart's codefendant, Hartmut Graewe, who received the same sentence, was definitely *not* sentenced to LWOP. (See, Order 6/15/2015, *Graewe v. United States*, Case No. 82 CR 119).

Yet the Parole Board rejected Mr. McTaggart's parole requests, erroneously insisting his was LWOP, which bars him from ever receiving that relief. That construction is illegal. In 1983, when the life with parole sentence was imposed, the iteration of Fed. R. Crim. Pro. 35 then in effect provided that the "court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." See, *Hill v. United States*, 368 U.S. 424, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962) (Noting that "as the Rule's language and history make clear, the narrow function of Rule 35 is to permit correction at any time of an illegal sentence.").

While the rule carried a time limit for a correction of a sentence imposed "in an illegal manner," there was no time limit for the correction of illegal sentences – they could be corrected at any time. "The district court under Rule 35 had the power to correct an illegal sentence at any time." *United States v. Huss*, 520 F.2d 598, 602 (2nd Cir. 1975). "An illegal sentence for purposes of Rule 35 is one in excess of a statutory provision or otherwise contrary to the applicable statute." *Id.*

It is true that habeas remedies have since supplanted Rule 35 in the modern age. However, beforehand, Rule 35 and § 2255 were treated as overlapping, "in that both authorize the correction of an illegal sentence, Rule 35 authorizes the correction of an 'illegal sentence at any time,' whether the correction results in the release of the prisoner, or even though the

petitioner has served his sentence." *Scarponi v. United States*, 313 F.2d 950, 952 (10th Cir. 1963) (internal citations omitted).

Under former Rule 35, the view of what constituted an illegal sentence was expansive. For example, the Ninth Circuit found that an error in the length of the sentence, where the judge misspoke at sentencing, was no mere clerical error, but an "illegal sentence." *United States v. Stevens*, 548 F.2d 1360, 1362 (9th Cir. 1977) ("the judge said 'two [years]," when he meant to say "ten [years]." The mistake comes squarely within Rule 35."). At the time, an illegal sentence under Rule 35 was also held by courts to encompass changes in the law years after the imposition of sentence. *United States v. Vaughn*, 598 F.2d 336, 337 (4th Cir. 1979) (reversing denial of Rule 35 motion filed three years after sentencing, based on Supreme Court decision impacting 924(c), finding that the change in the applicable law required the original sentence's reduction). Rule 35 also applied to correct/reduce a sentence where the defendant had undergone notable rehabilitation in prison. *Vaughan*, at 337 (judge was so impressed by the defendant's positive change in attitude reflected in his pro se motion that he ordered a 7-year reduction).

*The Parole Board has no Authority to Treat McTaggart's sentence as LWOP*

Former Rule 35 gives this Court the authority to address the Board's mistreatment of Mr. McTaggart's sentence and give effect to the sentence actually imposed by vacating the sentence or correcting it to time served. As the Bureau of Prisons (BOP) Sentencing Computation Sheet attached hereto as Exhibit B reflects, the Parole Board has indicated that it will never give Mr. McTaggart a hearing to consider his entitlement to parole.

This is not a clerical miscalculation. The Board has converted a sentence without the power to do so. As construed, the LWOP sentence is very much "contrary to the applicable statute," and it was not the sentence the trial court actually imposed. Under the circumstances, it

5

falls within the dictates of former Rule 35. "Sentences subject to correction under th[is] rule are those that the judgment of conviction did not authorize." *United States v. Morgan*, 346 U.S. 502, 506, 74 S. Ct. 247, 98 L. Ed. 248 (1954). That is the conclusion a District Court in the Eastern District of Virginia reached in *United States v. Redwine*, 2020 U.S. Dist. LEXIS 218000, when it applied former Rule 35 to reduce a sentence imposed on a defendant convicted before 1987, in light of the fact that 1) he was not eligible for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as that law is currently written; and 2) he had demonstrated extraordinary and compelling circumstances to justify release.

In *Redwine*, the court noted that due to the case's age and circumstances, 18 U.S.C. § 3582(c)(1)(A) and § 4205(g) could not provide a vehicle through which Mr. Redwine could obtain early release. Former Rule 35, however, did apply. The court noted the Rule's intent, which was "to give every convicted defendant a second round before the sentencing judge, and at the same time, it affords the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim." *United States v. Ellenbogen*, 390 F.2d 537, 543 (2d Cir. 1968); *see, also*, *United States v. Winterstein*, 912 F.2d 464, fn.2 (4th Cir. 1990) ("[T]he underlying objective of Rule 35 . . . is to "give every convicted defendant a second round before the sentencing judge, and [afford] the judge an opportunity to reconsider the sentence in light of any further information about the defendant or the case which may have been presented to him in the interim.").

Rule 35 "is also essentially a plea for leniency by the defendant." *United States v. Hirschfeld*, 14 F.3d 597 (4th Cir. 1994) (internal quotation marks and citation omitted). "Relief under Rule 35 is vested in the sound discretion of the district court; thus the district court's disposition of the motion is not reviewable on appeal except for a clear abuse of discretion." *Id.*

(internal quotation marks and citation omitted). The sentence the trial court originally imposed against Mr. McTaggart contemplated life with parole eligibility, construing it any other way is not authorized by law. Under the circumstances, and as argued below, this court should correct it to time served.

> *Mr. McTaggart has demonstrated extraordinary and compelling circumstances which warrant using Rule 35 to correct his sentence to time served.*

Undersigned have written at length to this Court about the reasons in favor of granting Mr. McTaggart's request for early release and will only briefly summarize them here. Mr. McTaggart went into prison when he was 26 years old. He has now been incarcerated for nearly 40 years. His record in prison is exemplary and without blemish. He has successfully completed countless rehabilitation programs, skill certifications, and community service projects. He now runs many of those same programs for other inmates within the institution. Mr. McTaggart's interactions with fellow inmates and institution staff, alike, over the years have enriched the institutional environments within which he's resided.

As the various letters of support previously provided to this Court attest, seemingly everyone who has interacted with McTaggart during his years of incarceration has nothing but positive things to say about him. In fact, every single individual with whom undersigned has communicated speak in glowing terms about him.[1]

---

[1] Just recently, undersigned had the opportunity to speak with Kyle Olsen, the Warden at Nevada Correctional Center in Carson City. Warden Olsen was previously employed by the Bureau of Prisons and was the Warden at FCI McKean when Mr. McTaggart resided there. The Warden recalls that McTaggart was an exemplary inmate who mentored others. Warden Olsen advised counsel that he is familiar with Kevin's history and the facts of his federal case. He has rarely spoken on behalf of any inmate during his lengthy corrections career, but McTaggart is the rare exception and he submits his highest praise for him. Finally, the Warden stressed that he is prohibited by Nevada Corrections policy from submitting a letter to the Court. However, if this Court were to contact him pre-hearing or during a hearing, he would verify and amplify on everything conveyed herein.

In addition to Mr. McTaggart's demonstrable rehabilitation, other factors support his return to the community. The COVID-19 pandemic, while currently appearing to wane, remains extant and Mr. McTaggart's age and documented physical health difficulties put him at greater risk of fatality in the event he catches the virus. His age – 65 – alone, makes him an excellent candidate for release. Data provided to this Court make plain that older offenders largely do not recidivate. Mr. McTaggart's BOP risk assessment puts him at an unprecedentedly low level for reoffending. Moreover, if he is released, Mr. McTaggart has solid and committed community and family support. This Court is aware of the many individuals who have promised a stable home, employment, along with financial and emotional support, to Mr. McTaggart as he makes his transition back into society.

At bottom, all of the evidence heretofore presented to this Court weighs in favor of his release.

**Conclusion**

This motion seeks relief in the alternative – Mr. McTaggart's sentence as construed by the Parole Board is illegal. This Court has authority to correct it under Rule 35, and he asks that it do so. Such relief is particularly called for in light of the compelling and extraordinary reasons for release – his age, medical conditions, COVID-19, the fact that to date he has served 40 years in prison, and his incredible record of rehabilitation during that service. In the alternative, Mr. McTaggart asks this Court to stay his motion for compassionate release under Title 18 U.S.C. § 3582(c)(1)(A)(i) and hold it in abeyance while Congress passes legislation intended to address the class of old law inmates deemed ineligible for release thereunder. Lastly, if this Court is not disposed to granting either request, Mr. McTaggart asks this Court for leave to withdraw his compassionate release motion at this time.

Respectfully submitted,

*/s/ Erika B. Cunliffe*
ERIKA B. CUNLIFFE, #0074480
Assistant Public Defender
MARK A. STANTON, #0007919
310 Lakeside Avenue, 2nd Floor
Cleveland, Ohio 44113
(216) 443-8388
E-mail: mastanton51@outlook.com
peachliffe1@yahoo.com

Attorneys for KEVIN McTAGGART

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2022 a copy of the foregoing supplemental submission was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/Erika B. Cunliffe*
Erika B. Cunliffe